## L. &. N. R. R. Co. v. Lee.

(Decided September 29, 1910).

## Appeal from Bullitt Circuit Court.

Railroads—Injury to Passenger—Alighting from Train—Instructions to the Jury.—In an action by a lady passenger against the L. & N. R. R. Co. for damages for injuries in alighting from its train, in which she recovered $5,000 in damages, the court instructed the jury that it was the duty of the defendant to exercise the utmost care which careful and prudent persons are accustomed to exercise under like circumstances to carry the plaintiff and to stop long enough to allow her a reasonable opportunity to get off, and it was the duty of the employes in charge of the train to exercise a like degree of care in assisting her to leave the train. Held (1), that the carrier does not contract to render a passenger personal service or attention in alighting from a train. (2) The court should have told the jury that the carrier was under no obligation to assist the plaintiff in alighting from the car, but when the flagman undertook to assist her, it was his duty in doing so to exercise that degree of care that may reasonably be expected of a prudent person under like circumstances, and that if she accidentally twisted her foot in stepping from the car and so fell without being negligently jerked from it by the flagman, they should find for the defendant.

BENJAMIN D. WARFIELD, CHARLES CARROLL and CHARLES H. MOORMAN for appellant.

BEN CHAPEZE and THOS. COCHRAN for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Appellee, Maudie Lee, was a passenger on one of appellant's trains from Louisville to Shepherdsville. She had with her her little boy seven years old, her baby, fourteen months old, and some packages. There were on the train several other ladies for Shepherdsville. When the train reached Shepherdsville, the ladies all got up to leave the car. One of them took appellee's little boy out with her, another some of her packages, and she brought up the rear, carrying her baby and some of the packages. When the last of the ladies was off the steps she started down. The brakeman was on the platform at the bottom of the steps and had helped the other ladies off. According to her testimony he

reached up his hand and took hold of her hand, then stood back and gave her a pull, which caused her to fall from the step to the platform, twisting her foot under her. To quote her own language, she thus states it:

"Q. Now tell the jury how you fell?"

"A. Why, when he gave me a jerk I had no way to catch myself; and when he pulled me and gave me a jerk he twisted my hand loose, and I fell on this foot and arm, and that twisted me over. When he seen me down on the ground—I tried to raise myself, but couldn't—he tried to pull me out of the way of the train; and he told me to get out of the way of the train or the train would run over me."

By reason of her fall her ankle was sprained, and she has not since been able to walk on the foot. She also received painful injuries to the shoulder and two of her ribs. She introduced on the trial a bystander, whose testimony in some measure sustains hers as to how she came to fall. On the other hand, the proof for the defendant showed that the brakeman did not jerk or pull her, but that in stepping from the car, with her baby, and bundles in her arms, she accidentally twisted her foot and fell. She weighed 195 pounds, and the brakeman, according to this evidence, helped her off just as he had helped the other ladies. The train was standing still and did not move until she got up. She recovered in the circuit court a verdict and judgment for $5,000.00 for her injuries. The railroad company appeals.

By instruction 1, the court told the jury that if the defendant negligently failed to stop its train at the station a sufficient length of time to afford plaintiff a reasonable opportunity to alight therefrom in safety to herself, or if she was negligently pulled or jerked therefrom by the brakeman and by reason of either of these things was hurt, they should find for her. There was no evidence in the case that the train was moving. The plaintiff, herself, says that it was not moving but standing still, and all the other testimony is to the effect that the train did not move from the time it stopped for passengers to get off until after the plaintiff had been removed from the ground where she fell. There was no evidence in the case tending to show that the train did not stop at the station a sufficient time to give the passengers a reasonable opportunity to alight, and all of this matter should have been eliminated from the instruction. To submit the matter to the jury was

to submit to them a matter on which there was no evidence. The instruction should have been confined simply to the question whether the brakeman negligently pulled or jerked the plaintiff from the steps of the car.

By the second instruction the court told the jury that it was the duty of the defendant to exercise the utmost care, which careful and prudent persons are accustomed to exercise under like circumstances, to carry the plaintiff safely to her destination and to stop at that place long enough to allow her a reasonable opportunity to get off, and that it was the duty of those employees in charge of the train to exercise a like degree of care in assisting her to leave the train. In I. C. R. R. Co. v. Cruse, 123 Ky. 462, we held that the carrier does not contract to render the passenger personal service or attention in alighting from the vehicle in which he is carrying him. In that opinion a number of authorities are collected, and under the principles there laid down, the second instruction was erroneous, and should not have been given. The jury might well have concluded from that instruction that it was the duty of the railroad company to have a flagman at the steps strong enough to hold up the plaintiff in case she lost her footing as she stepped from the cars, and so to have prevented her from falling. In lieu of the second instruction, the court should have told the jury that the carrier was under no obligation to assist the plaintiff in alighting from the car; but when the flagman undertook to assist her it was his duty to exercise, in doing so, that degree of care that may be reasonably expected of a person of ordinary prudence under like circumstances; and that if she accidentally twisted her foot in stepping from the car and so fell without being negligently pulled or jerked from the car by the flagman, as set out in No. 1, they should find for the defendant. We perceive no error in the third, fourth or fifth instructions, and these, with those we have indicated, present the whole law of the case.

What the brakeman said to the plaintiff just after she fell was so closely connected with the fall as to be properly admitted as part of the res gestae. She says he said to her, "Get out of the way; get up or the train will run over you. The train is going." A bystander who was the only witness she introduced on the subject, said the brakeman's words were, "Lady, you will have to move up and let the train go by." She was in a

position of danger; if the train moved she might be drawn under it. The brakeman was right in admonishing her to move and move at once; and if he was a little excited or positive this did not make the words an insult or improper. And so it was immaterial whether he spoke in a pleasant or angry tone, or what his manner was in saying this, and this part of the examination of the plaintiff should be omitted. The witness can state what occurred, but the examination should stop there.

On another trial, Mrs. Bridwell will not be permitted to state that the plaintiff is an invalid for life; as Mrs. Bridwell is not a physician and no more qualified to give an opinion on this subject than any of the jury.

The allegations of the plaintiff's petition to the effect that by her fall she was seriously and permanently injured in and about her back, ribs, sides, foot, ankle, legs and other parts of her body, are broad enough to admit the proof offered to the effect that two of the ribs were fractured; and that by reason of this injury the pleura became inflamed and pleurisy set up, as the injury to the pleura was the result of the injury to the ribs and sides which is alleged in the petition.

The court did not err in refusing to instruct the jury peremptorily to find for the defendant. If the brakeman negligently pulled or jerked the plaintiff from the steps of the car, and thus caused her to fall and receive the injuries sued for, the defendant is liable. It is common for carriers to have a person to assist passengers in alighting, and while they are not required to do this, it is done as a courtesy or a precaution against danger. And if the servant instead of assisting the passenger in alighting, negligently pulls him from the steps, and causes him to fall, this is an actionable wrong.

Judgment reversed and cause remanded for a new trial, and further proceedings consistent herewith.